JjDUFRESNE, Judge.
This is an appeal by Herman Sea-les, claimant, from an adverse judgment in his workers’ compensation claim against his employer, Ryder Integrated Logistics. Claimant sought compensation for disability allegedly arising from a work related injury to a disc in his back, and also for approval of surgery involving that disc. After a hearing, the workers’ compensation judge ruled that claimant was not entitled to either temporary total disability benefits or surgery. This appeal followed.
Because the issues before us involve factual determinations, the standard of review is that of manifest error, Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375. Under this standard, so long as the findings of the trier of fact are reasonable in light of the *410 record viewed in its entirety the appellate court may not reverse those findings, even where the reviewing court might have made different findings had it been sitting as the trier of fact, id. at 381.
The evidence presented is as follows. It was stipulated that on June ]224, 1996, claimant was tying down a load on his truck when he felt a “pop” in his back which caused him to fall to his knees. It was further stipulated that the injury occurred in the course and scope of claimant’s employment. He duly reported the injury to his employer, and later that day he was seen by Dr. Jose Figueroa, a general practitioner, who diagnosed a back strain. On the employer’s referral, on July 10, 1996, he saw Dr. J.L. Fambrough, an orthopaedist. This physician noted that claimant exaggerated his symptoms and also had an unusual pain distribution based on his subjective complaints. He said that based on the examination he would assume a musculoskeletal problem and he prescribed medication and physical therapy. He also found him disabled from work at the time and asked that he return in two weeks. Claimant said that he did not take the prescribed medication, and the record is unclear as to whether or not he pursued the physical therapy at that time.
The evidence shows that claimant’s next medical treatment was with Dr. Bruce Razza, an orthopaedic surgeon of his choosing, on December 10, 1996. This doctor noted that claimant was “hyper-responsive” to the physical exam, but nonetheless diagnosed lumbar radiculopa-thy and paresthesia syndrome based n this exam. He ordered a number of further diagnostic tests and concluded that claimant was not fit for work at the time. On June 11, 1997, he was again seen by Dr. Fambrough and on this occasion this doctor noted that although there was little in the way of objective findings, he might well have an orthopaedic problem, but that he exaggerated his symptoms to such an extent as to “muddy the waters.” He recommended continued conservative treatment.
On July 29,1997, claimant again saw Dr. Razza, who by this time 13had received the results of a number of tests. A January 16, 1997, MRI was normal and a January 27, electrodiagnostic test was normal. A functional capacities evaluation of March 26, indicated that claimant was seriously exaggerating his symptoms and had failed to cooperate with the testing procedures. However, a discogram of July 16, was positive for problems at the L5-S1 level. In Dr. Razza’s opinion this last test confirmed his earlier diagnosis of radiculopathy and disc disruption at that level. His recommendation was for a surgical procedure.
At the employer’s request, claimant was seen on October 1, 1997, by Dr. John Schumacher, a neurological surgeon. This doctor reviewed all of the tests ordered by Dr. Razza, except the discogram. He stated, however, that in his opinion discograms are not of significant diagnostic value. He noted that the MRI was completely normal, as was the electrodiagnostic test. His physical examination of claimant showed no objective findings to support either claimant’s complaints or a diagnosis of lumbar spine abnormality. He was of the further opinion that claimant was fit for work.
Because of the diverging opinions of these various doctors, Dr. Anthony Ioppo-lo, a neurological surgeon, was appointed as an independent medical examiner. He saw claimant on January 6, 1998, conducted a physical examination and reviewed all of the prior medical reports and tests. The physical examination indicated that claimant’s complaints of pain were all out of proportion to what would be normal. He said that when he just laid his fingers on claimant’s back he responded as though in extreme pain. His attempts to test muscle strength were also frustrated by claimant’s complaints of pain on the least exertion. The doctor noted that the MRI was totally normal and that the electromagnetic |4tests were normal. He re *411 viewed the discogram but found it of no diagnostic value in light of the normal MR.I. His conclusion was that he saw “absolutely no indication for surgery.” He also concluded that claimant was fit for work without any restrictions.
Several months later, on May 4, 1998, Dr. Razza sent claimant for a second opinion to Dr. John Jackson, a neurological surgeon. This doctor concluded that there was indeed an abnormal disc at the L5-S1 level, and that surgery was indicated. Yet another examination by a second consulting physician was then recommended by Dr. Razza, this time Dr. Stuart Phillips, an orthopaedic surgeon. This doctor also recommended surgery.
On the basis of the above evidence, the workers’ compensation judge determined that claimant could return to work and that he did not need surgery. Claimant has appealed this judgment urging three assignments of error. He contends, first, that the judge did not properly consider his testimony, second that she did not follow the diagnoses of his treating physicians, and third, she erroneously relied on only parts of the diagnoses of the doctors who saw no need for surgery and found him fit for duty. Because all of these assignments raise factual issues, they are all to be analyzed under the manifest error rule, i.e. does the record provide a reasonable basis for each of these factual findings.
As the above review of the medical evidence shows, almost all of the doctors who saw claimant, including Dr. Razza, found him to be exaggerating his symptoms of pain. The report of the examiner for the functional capacity evaluation showed that claimant did not ever exert himself to maximum capacity for the tests, thus making a proper evaluation |sdiffieuit, and also met all five of the test’s criteria designed to expose malingering. On the critical question of the discogram results, Drs. Schu-macher and Ioppolo, both neurological surgeons, testified uniformly that the test was not a reliable diagnostic tool.
While claimant did testify to continuing pain and inability to work, his credibility was substantially undermined by the above evidence of his exaggerations of his symptoms. Although his treating physician, Dr. Razza, as well as Drs. Jackson and Phillips, were convinced of the disc problem and need for surgery, there was evidence to the contrary. Considering the entire record, it is evident that a reasonable view of the contradictory evidence presented in the case could lead to the factual findings made by the trier of fact. That being so, this court is precluded from reversing those findings. Accordingly, the judgment of the workers’ compensation judge is hereby affirmed.

AFFIRMED.